RUSSELL, *et al. v.* LODE, *et al.*

Where eighty acres of land were purchased at the land-office by C., in trust, and with the understanding that he should deed to the two claimants L. and R.; to L. all of said eighty lying west of a certain road, and to R. the residue; and L. furnished C. with the necessary entrance money for his portion of the land prior to the purchase; a question arising between R. and M. in relation to the location of the road, as differently surveyed by three respective surveyors; it was held that the survey should be recognized, which followed the road as generally travelled, and which had previously marked the boundary between the two claims; and especially as such survey constituted the data upon which arbitrators appointed by mutual consent had

Russell *v.* Lode.

previously awarded the land in dispute to L.; and also held that C. as trustee was responsible to L. for such portion of the eighty acres of land. .

IN EQUITY. *Appeal from Dubuque District Court.*

*Lovell* and *Samuels,* for the appellants. Prior to July 3d, 1846, Isaac Russell purchased from one Patrick Maloney the claim to certain lands lying in the county of Dubuque, and bounded on the west side by the territorial road leading from Dubuque to Davenport. The said Maloney, on the 3d day of July, 1846, sold to the Messrs. Lodes, appellees, his claim to a certain tract of land lying west of said territorial road, and bounded on the east thereby : thus making the road the dividing line between the parties to this appeal. And the principal difficulty now existing between the parties is, in determining where the said road runs.

In view of these difficulties, both the parties furnished one Conger certain moneys to be employed in purchasing the land in dispute, at the sales of the public lands, which land was to be conveyed by said Conger to the party to whom it might be determined to belong. Said Conger did purchase the land at the land sales, and refused to convey to either of the parties until they could determine who was properly entitled thereto.

In the mean while different surveyors were appointed to run the road and settle the question of its location. These surveys. differed widely and materially. We shall and do insist, however, that the survey made by Guy H. Carleton is entitled to more weight and consideration with the court than the surveys of either Mr. Higbee or Mr. Anderson, for the reasons.; 1st. That the parties selected Mr. Carleton, and agreed to abide by the survey he might make. 2d. Because he was the only one who had the means of determining with accuracy where the road did run,—he having a copy of the field notes of the original survey, and making the survey in accordance thereto.

The other surveyors were selected by the Messrs. Lodes, without the knowledge or consent of the appellant, and they

surveyed the road as directed by the appellees without the appellant being present.

There was an effort made to adjust the difficulty by a reference of the questions in dispute to certain arbitrators. An award was made by these arbitrators, which admits of different constructions, and the meaning of which is differed about by the different arbitrators. Conger, at this time, understanding the award as insisted for by the appellant, made a conveyance of the disputed lands to Russell.

The only question, in our opinion, to be determined by your honors, is, whether the land in dispute lies east or west of the territorial road, leading from Dubuque to Davenport. If east, clearly the land belongs to Russell, the appellant, and this court will kindly interpose its authority to protect and preserve his rights. If, on the contrary, the land in dispute be west of the said road, the court will not hesitate to confirm the decree of the court below. We would refer your honors, on this point, to the deposition and survey of Guy H. Carleton.

*S. Hempstead,* for the appellee. There are two questions involved in this case : 1. The true boundary established between the complainants, and Russell the defendant, by the arbitrators ; and second, whether the complainants furnished Patrick Conger, defendant, with the money to purchase the land in dispute, and whether he did purchase the same as an agent or trustee for the complainants.

1. Upon the first question, we have the testimony of the three arbitrators, who swear that the plat of survey made by Anderson affixed to complainants' testimony, was the one that was before them at the time of the arbitration, and that the road as therein surveyed was the one which they specified in their award as the "*Road.*" We, then, have a marked and distinct boundary of the land in dispute between the complainants and Russell, the defendant, established by *three* witnesses. Is this not sufficient on this point ?

2. As to the second question, the answer of Conger, de-

fendant, admits that he entered the said land at the land sales with money furnished by the said parties—that he acted as agent or trustee in the matter. But is it true that Russell, the defendant, furnished any money at the land sales for the purchase of the twenty-four acres which had been awarded to the complainants ? Not one cent did he furnish for that purpose, as is conclusively proven by his own testimony and exhibits. Conger, the defendant, in the first place receipts to F. J. Lode, March 15th, 1847, for $30.25, for the. entry of part of the S. W, ¼ of Sec. 31, town. 88, range 3 east of the 5th Meridian, which would pay for the land in dispute, according to the survey of Anderson and the boundary established by the arbitrators. That Russell did not advance the money for this land previous to the land sales, is plain from the receipt of Conger to Russell appended to defendants' testimony, as admitted, dated July 2d, 1847, which sets forth, "Received of Isaac Russell twenty-eight dollars fifty cents, it being money to apply on land which is now in dispute between him and F. J. and G. F. Lode." If this money had been paid for the purchase of the land at the time of the sale by the government, as averred by Russell and Conger, why does Russell pay it again on the second day of July, after the sale of the lands had taken place ?

That the complainants, or one of them, advanced the money to Conger for the purpose of purchasing the land in dispute, cannot be controverted. Conger tells Lode at the time of the land sales in Dubuque, " not to be uneasy, as he should deed or convey according to the decision of the arbitrators." That Conger stood as trustee to the fund thus advanced, is admitted by the answer, and proven ; and " it seems to be settled, that if the purchaser confess in his answer, or in writing under his hand, that the money laid out was the money of the person claiming the benefit of the purchase, it is sufficient to establish a resulting trust." 2 Washington's C. C. R. 445.

Neither Russell nor Conger pretend that Conger purchased the land in dispute for himself, or with his own money.

That Conger purchased the land of the government, is be-
yond all question, and that he used the money furnished for
that purpose by F. J. Lode, one of the complainants, is, we
think, well established ; and even without any testimony,
we contend that as Conger, the defendant, neither admits
nor denies the direct charge in the petition, that he, with the
money of the complainants, purchased of the United States
the said land in dispute, that the charge is admitted to be
true, as it is settled, " If the bill charges a fact to be within
the knowledge of defendant, or what may be presumed.to
be so, and the answer is silent to it, it will be taken as ad-
mitted." *Moore* v. *Lackett*, 2 Bibb, 69 ; *Kennedey* v. *Mere-
dith*, 3 Bibb, 466 ; *Pearson* v. *Meaux*, 3 Marsh, 6 ; 1 ib.
336.

We have thus established the arbitration, the award, the
line of division between complainants and Russell to be as by
Anderson's survey, the fact that complainants paid to Conger
the $30.25, for the purpose of purchasing the lands of the
government, and that it was purchased with that money by
him, as agent or trustee.

Russell, the defendant, contends that the award of the ar-
bitrators did not settle the boundary as to the road, and that
there was still a dispute as to the same at the time of the land
sales, &c., and that afterwards it was agreed by the parties,
that one Guy H. Carleton should make a survey of said road,
according to the original notes of the record of survey, and
that the deeds from Conger were to be made in accordance
with said survey.

The court will bear in mind that these matters are in
*avoidance*, and must be proved by the defence, 1 Bibb, 195 ;
2 John. Ch. R. 89.

For the purpose of establishing these 'things, the defence
introduced Carleton and Thomas R. Brasure.    Carleton
states that the survey made by him " was to be an end' of
the matter."    Upon cross-examination he states that he does
not recollect " whether it was agreed to be final or not, but
that this was his understanding."    That this survey was to

Russell *v.* Lode.

be final is disproved by Maloney and Killam.    Maloney swears that at the commencement of the survey, " Mr. Lode said that he would abide by the survey of Mr. Carleton if it was correct, and that at the time that Mr. Carleton made the survey, the Messrs. Lodes were contending for the road as laid out by the original survey, and as actually laid out by the commissioners." Killam swears that " at the time Mr. Carleton made the survey, Mr. Lode said that he would abide the survey, ' if the field notes were right,' and protested before the survey was concluded, that it was wrong, and that no other surveyor ever took the route that" he, Carleton did.    That no one ever did or ought to have taken that route, for the Dubuque and Davenport road, is proven by the testimony of Foley, one of the commissioners under the law to lay out said road, and by the survey of John G. McDonald, as made by him at the time the road was laid off. There is nothing in the testimony to show that the complainants were to be bound by the survey of Carleton, or that the deeds from Conger were to be made in accordance with said survey.    The defence have therefore wholly failed to prove those matters in avoidance, which they have set up.    All that the complainants ask or ever have asked in this matter, is that they may have the land awarded to them by the arbitrators, up to the Dubuque and Davenport road, as they purchased of Maloney, and where that road was actually run by the commissioners appointed to lay off the same, and to which they are entitled by the clearest rules of law and equity.

*Opinion by* GREENE, J.    The defendants in error filed their bill in chancery for the specific performance of a contract to convey certain real estate.    The bill charges that in July, 1846, the complainants purchased a claim to a quantity of land from Patrick Maloney, including all that portion of the east half of the south-west quarter of section 31, in T. 88, N. R. 3 east, which lies west of, and is bounded on the east by, the Dubuque and Davenport road ; that in the month

of February following, one of the defendants, Isaac Russell, set up a claim to part of said land, and the dispute was, by mutual agreement, referred to arbitrators, whose award in the premises was to be final and binding upon the parties; that the arbitrators awarded all of the land lying west of said road to the complainants; that subsequently, and previous to the land sales in the spring of 1847, they entered into an arrangement with Patrick H. Conger, by which he agreed to purchase the said portion of land at the sales, in his name, for their use and benefit, and immediately after the purchase from government, to convey the same to them; that they, or one of them for both, furnished said Conger, at the time of the arrangement, with the entrance money, and thereupon obtained from him a receipt in the words following:

"Dubuque, March 15, 1847.

"Received of J. F. Lode thirty dollars and twenty-five cents, cash, for the entry of his part of E. ½ of the S.W. ¼ of section 31, T. 88, range 3 east of 5 mer.

P. H. CONGER."

The bill also alleges that Conger took upon himself the trust, and purchased the land at the sales with the funds furnished by complainants; that they demanded of Conger a deed for the same, which was refused, and that he subsequently conveyed the land to said Russell.

The facts set forth in the bill are mostly admitted by the respective answers of Russell and Conger, excepting the course and location of the Dubuque and Davenport road; and this is the principal question involved in the case. It is in no way denied that this road constitutes the true boundary line between the land of the complainants and that of the defendant, Russell. We have before us three different plats and surveys of the road, as referred to in the answers and depositions. The survey made by G. H. Carleton leaves less than half an acre of the *eighty* in dispute, west of the road, and over seventy-nine and a half acres east of it. This

survey, it is claimed, was made from the recorded plat of the road that Conger conveyed to Russell, all the land east of the road, as surveyed by Carleton, and that this convey- ance was in accordance to the award of the arbitrators, which determined the land east of the road to be Russell's, and that west of it to be the Lodes'. But the other two surveys, made by D. Higbee and A. Anderson, vary most materially from the Carleton survey; Higbee's leaving twenty-seven and a half acres, and Anderson's leaving twenty-four and one-fifth acres of the land west of the road. The testimony of the three arbitrators shows that the plat of Anderson's survey was before them at the time they made the award in the dispute between the claimants and Russell, and that they were guided by Anderson's survey and plat in making their decision; awarding all of the land in the *eighty* that lay west of the road, as surveyed by him, to the Lodes, and the land east of the said road to Russell.

But it is claimed for the defendants, that the award of the arbitrators did not settle the location of the road; that it had been and still was in dispute, at the time Carleton made his survey, and that just before it was made, complainants agreed to be governed by it. To support these positions, the evidence of Carleton and Brasure is introduced. And they testify, that they so understood and supposed the facts to be; but their information in the matter appears so illegitimate, their views so indefinite, and their terms so hypothetical, that we can by no means regard them as satisfactory or con- clusive. That this survey was not considered final and bind- ing by the parties, is conclusively proved by the testimony of Maloney and Killam. Maloney swears that the com- plainants, at the commencement of the survey, declared their willingness to abide by it if correct, and that during its pro- gress they were contending for the original survey, as laid out by the locating commissioners. Killam swears, that at the time Carleton made the survey, the complainants pro- tested that it was wrong, and that no other surveyor ever took the same route. John Foley, one of the locating com-

missioners, and J. G. McDonald, the locating surveyor, prove that Carleton's survey was not made according to the original survey and location of the road, while their testimony, with that of Maloney and other witnesses, recognizes the Anderson survey, as being regulated by the original location and usual travel of the road. P. Maloney also testifies, that when he conveyed to the Lodes, the road ran as represented by Anderson's survey. The evidence on this point is too conclusive to admit of a rational doubt. The understanding of the parties, prior and subsequent to the award,—the survey of the road by Anderson, as it was travelled and generally recognized,—with the fact that his survey was before the arbitrators, and that they took it as the data and boundary for their decision, even aside from the satisfactory testimony of Maloney, fully sustain the equity of the bill, and clearly establish the right of the complainant to the land in question.

The question raised, as to the agency and liability of the defendant, Conger, needs no elucidation. His answer admits that he entered the land with money furnished by the parties, "and that he acted as agent or trustee in the matter." It appears by the evidence and exhibits in the case, that complainants furnished Conger with the necessary entrance money, previous to the land sales; while an exhibited right from Conger to Russell shows that Russell did not pay Conger any money on the land in question, till several months after the sales, and even subsequent to the survey made by Carleton. The twenty-four acres of land west of the road were unquestionably purchased with the funds furnished by the Lodes; and it is equally undeniable, that Conger stood as trustee of the funds so advanced, with the understanding and agreement, that he was to convey to the complainants the quantity, with the boundaries as determined by the award of the arbitrators. A resulting trust is too clearly established to admit of doubt; and no principle of justice, no rule in equity, can exclude the complainants from the benefit of a purchase which their own funds secured.

The decree of the district court is affirmed.